JUDGE HOLWELL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: DEC 15 2009

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

: **INDICTMENT**

-v.-

: 09 Cr.

RAJ RAJARATNAM and
DANIELLE CHIESI,

09 CRIM 1184

Defendants. :

- - - - - - - - - - - - - - - - - - - - - - - x

**COUNT ONE**

(Conspiracy to Commit Securities Fraud)

The Grand Jury charges:

**Relevant Entities and Individuals**

1. At all times relevant to this Indictment, the Galleon Group ("Galleon") operated a family of hedge funds based in New York, New York. At all times relevant to this Indictment, Galleon Management, L.P., of which RAJ RAJARATNAM, the defendant, was a partner, operated as the General Manager for certain of Galleon's hedge funds. Those funds included Galleon Technology Partners II, LP, Galleon Technology Offshore Ltd. and related funds whose strategy involved primarily trading securities of technology companies (the "Galleon Technology Funds"). During certain times relevant to this Indictment, the Galleon Group had as much as $7 billion in assets under management.

2. At all times relevant to this Indictment, RAJ RAJARATNAM, the defendant, served as the portfolio manager for the Galleon Technology Funds and was responsible for directing trading

in those funds.

3. From in or about 1999 to in or about 2007, Ali Far, a co-conspirator not named as a defendant herein, worked as a portfolio manager and/or analyst for Galleon. In or about 2007, Far left Galleon to form Spherix Capital LLC, a hedge fund based in California, where Far worked as the Managing Member until the fall of 2009.

**The Rajaratnam-Far Insider Trading Scheme**

4. From in or about 2003 through in or about March 2009, RAJ RAJARATNAM, the defendant, Ali Far, and others known and unknown, participated in a scheme to defraud by disclosing material, nonpublic information ("Inside Information") and/or executing securities transactions based on Inside Information pertaining to Atheros Communications, Inc. ("Atheros"), Marvell Technology Group, Ltd. ("Marvell"), and other companies. For example, Far obtained Inside Information regarding Atheros, Marvell and other companies from employees of those companies (the "Far Inside Sources") who disclosed the Inside Information in violation of duties of trust and confidence that the Far Inside Sources owed to their respective employers and their shareholders. Far communicated this Inside Information to RAJARATNAM, who, knowing that the Inside Information had been disclosed in violation of duties of trust and confidence, caused the Galleon Technology Funds to execute securities transactions on the basis

of this Inside Information, earning profits from the scheme. In exchange, RAJARATNAM provided Far with Inside Information regarding other technology companies, including Intel Corporation ("Intel").

**The Conspiracy**

5. From at least in or about 2003 up to and including in or about March 2009, in the Southern District of New York and elsewhere, RAJ RAJARATNAM, the defendant, Ali Far, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate and agree together and with each other to commit offenses against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) & 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

**Object of the Conspiracy**

6. It was a part and an object of the conspiracy that RAJ RAJARATNAM, the defendant, Ali Far, and others known and unknown, unlawfully, willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing

devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

**Means and Methods of the Conspiracy**

7. Among the means and methods by which RAJ RAJARATNAM, the defendant, Ali Far, and others known and unknown, would and did carry out the conspiracy were the following:

a. The Far Inside Sources misappropriated Inside Information in violation of: (a) the fiduciary and other duties of trust and confidence that these sources owed to their respective employers and their shareholders; (b) the expectations of confidentiality of their respective employers; and (c) their respective employers' written policies regarding the use and safekeeping of confidential and material, nonpublic information.

b. The Far Inside Sources disclosed the Inside Information to Ali Far in breach of their duty of confidentiality to their respective employers and their shareholders, with the understanding that Far would use the Inside Information to

purchase and sell securities, and thereby receive substantial illegal profits.

c. Far disclosed certain of this Inside Information to RAJARATNAM, knowing that the Far Inside Sources had disclosed the Inside Information in breach of their duty of confidentiality to their respective employers and their shareholders.

d. RAJARATNAM, while in possession of the Inside Information that he knew had been misappropriated by the Far Inside Sources in breach of their duty of confidentiality to their respective employers, purchased and sold securities based on such information and thereby received substantial illegal profits.

**Overt Act**

8. In furtherance of the conspiracy and to effect the illegal object thereof, RAJ RAJARATNAM, the defendant, Ali Far and their co-conspirators committed the following overt act, among others, in the Southern District of New York and elsewhere:

a. In or about January 2009, Ali Far called RAJARATNAM in New York, New York, and provided him with Inside Information relating to Atheros.

(Title 18, United States Code, Section 371.)

**COUNT TWO**

(Conspiracy to Commit Securities Fraud)

The Grand Jury further charges:

**Relevant Entities and Individuals**

9. The allegations contained in paragraphs 1 and 2 of this Indictment are repeated and realleged as though fully set forth herein.

10. At all times relevant to this Indictment, Roomy Khan, a co-conspirator not named as a defendant herein, traded securities on her own behalf and, at certain times relevant to this Indictment, exchanged Inside Information about certain companies with RAJ RAJARATNAM, the defendant.

**The Rajaratnam-Khan Insider Trading Scheme**

11. From in or about January 2006 through in or about July 2007, RAJ RAJARATNAM, Roomy Khan, and others known and unknown, participated in a scheme to defraud by disclosing Inside Information and/or executing securities transactions based on Inside Information pertaining to at least the following publicly traded companies: Polycom, Inc. ("Polycom"), Hilton Hotels Corp. ("Hilton"), and Google Inc. ("Google"). The means by which RAJARATNAM and Roomy Khan effectuated the scheme were as follows: Khan obtained Inside Information regarding Polycom, Hilton and Google from various sources (the "Khan Inside Sources") who disclosed the Inside Information in violation of duties of trust

and confidence that the Khan Inside Sources owed to their respective employers, their shareholders, and/or their employers' clients. Khan communicated this Inside Information to RAJARATNAM, who, knowing that the Inside Information had been disclosed in violation of duties of trust and confidence, caused the Galleon Technology Funds to execute securities transactions on the basis of this Inside Information, earning a total profit of more than $12.7 million from the scheme. In exchange, RAJARATNAM provided Khan with information regarding Intel Corp. and other technology companies.

**The Conspiracy**

12. From at least in or about January 2006 up to and including in or about July 2007, in the Southern District of New York and elsewhere, RAJ RAJARATNAM, the defendant, Roomy Khan, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate and agree together and with each other to commit offenses against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) & 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

**Object of the Conspiracy**

13. It was a part and an object of the conspiracy that RAJ RAJARATNAM, the defendant, Roomy Khan, and others known and unknown, unlawfully, willfully and knowingly, directly and

indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

**Means and Methods of the Conspiracy**

14. Among the means and methods by which RAJ RAJARATNAM, the defendant, Roomy Khan, and others known and unknown, would and did carry out the conspiracy were the following:

a. The Khan Inside Sources misappropriated Inside Information in violation of: (a) the fiduciary and other duties of trust and confidence that these sources owed to their respective employers, their shareholders, and/or their employers' clients;

(b) the expectations of confidentiality of their respective employers; and (c) their respective employers' written policies regarding the use and safekeeping of confidential and material, nonpublic information.

b. The Khan Inside Sources disclosed the Inside Information to Roomy Khan in breach of their duty of confidentiality to their respective employers, their shareholders, and/or their employers' clients, with the understanding that Khan and others would use the Inside Information to purchase and sell securities, and thereby receive substantial illegal profits.

c. Khan disclosed the Inside Information to RAJARATNAM, knowing that the Khan Inside Sources had disclosed the Inside Information to her in breach of their duty of confidentiality to their respective employers, their shareholders, and/or their employers' clients.

d. RAJARATNAM, while in possession of the Inside Information that he knew had been misappropriated by the Khan Inside Sources in breach of their duty of confidentiality to their respective employers, their shareholders, and/or their employers' clients, purchased and sold securities based on such information and thereby received substantial illegal profits.

**<u>Overt Acts</u>**

15. In furtherance of the conspiracy and to effect the illegal object thereof, RAJ RAJARATNAM, the defendant, and Roomy

Khan and their co-conspirators committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a. On or about January 9, 2006, Khan sent the following instant message to RAJARATNAM, in New York, New York: "donot [sic] buy plcm till i het [sic] guidance; want to make sure guidance OK."

b. On or about January 12, 2006, in New York, New York, RAJARATNAM caused the Galleon Technology Funds to purchase approximately 60,000 shares of Polycom common stock, which traded under the symbol "PLCM."

c. On or about July 3, 2007, in New York, New York, RAJARATNAM caused the Galleon Technology Funds to purchase approximately 400,000 shares of Hilton common stock, which traded under the symbol "HLT."

d. On or about July 17, 2007, in New York, New York, RAJARATNAM caused the Galleon Technology Funds to purchase approximately 1,000 put options in Google, which traded under the symbol "GOOG," and to short approximately 25,000 shares of Google common stock.

(Title 18, United States Code, Section 371.)

**COUNT THREE**

(Conspiracy to Commit Securities Fraud)

The Grand Jury further charges:

**Relevant Entities and Individuals**

16. The allegations contained in paragraphs 1 and 2 of this Indictment are repeated and realleged as though fully set forth herein.

17. At all times relevant to this Indictment, a co-conspirator not named as a defendant herein ("CC-1"), was employed by Intel Capital, the investment arm of Intel, as a Director in Strategic Investments.

**The Rajaratnam/CC-1 Insider Trading Scheme**

18. From at least in or about March 2008 through in or about October 2008, RAJ RAJARATNAM, the defendant, CC-1, and others known and unknown, participated in a scheme to defraud by disclosing Inside Information and/or executing securities transactions based on Inside Information pertaining to a company called Clearwire Corporation ("Clearwire"), a publicly traded company. The means by which RAJARATNAM and CC-1 effectuated the fraudulent scheme were as follows: CC-1 obtained Inside Information regarding investments made by his employer, Intel Capital, including an investment made by Intel Capital in Clearwire in or about the spring of 2008 (the "Clearwire Inside Information"). CC-1 disclosed this Clearwire Inside Information

to RAJARATNAM in violation of duties of trust and confidence that CC-1 owed to CC-1's employer. RAJARATNAM, knowing that CC-1 had disclosed the Clearwire Inside Information to him in violation of duties of trust and confidence, then caused the Galleon Technology Funds to execute securities transactions on the basis of this Inside Information, earning a total profit of approximately $579,000 from the scheme. In exchange, RAJARATNAM placed profitable trades for the benefit of CC-1 in a personal brokerage account maintained by CC-1. For example, in or about October 2008, RAJARATNAM executed a profitable trade in PeopleSupport common stock in CC-1's personal brokerage account based on Inside Information that RAJARATNAM obtained from his colleague at Galleon who served on PeopleSupport's Board of Directors.

**The Conspiracy**

19. From at least in or about March 2008 up to and including in or about October 2008, in the Southern District of New York and elsewhere, RAJ RAJARATNAM, the defendant, CC-1, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate and agree together and with each other to commit offenses against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) & 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

**Object of the Conspiracy**

20. It was a part and an object of the conspiracy that RAJ RAJARATNAM, the defendant, CC-1, and others known and unknown, unlawfully, willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

**Means and Methods of the Conspiracy**

21. Among the means and methods by which RAJ RAJARATNAM, the defendant, CC-1, and others known and unknown, would and did carry out the conspiracy were the following:

a. CC-1 misappropriated the Clearwire Inside Information in violation of: (a) the fiduciary and other duties of

trust and confidence that CC-1 owed to CC-1's employer; (b) the expectations of confidentiality of CC-1's employer; and (c) CC-1's employer's written policies regarding the use and safekeeping of confidential and material, nonpublic information.

b. CC-1 disclosed the Clearwire Inside Information to RAJARATNAM in breach of CC-1's duty of confidentiality to CC-1's employer, with the understanding that RAJARATNAM and others would use the Inside Information to purchase and sell securities, and thereby receive substantial illegal profits.

c. RAJARATNAM, while in possession of the Clearwire Inside Information that he knew had been misappropriated by CC-1 in breach of CC-1's duty of confidentiality to CC-1's employer, purchased and sold securities based on such information and thereby received substantial illegal profits.

**Overt Acts**

22. In furtherance of the conspiracy and to effect the illegal object thereof, RAJ RAJARATNAM, the defendant, CC-1, and their co-conspirators committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a. On or about March 20, 2008, a call was made from CC-1 to a cell phone used by RAJARATNAM.

b. On or about March 24, 2008, in New York, New York, RAJARATNAM caused the Galleon Technology Funds to purchase

approximately 125,800 shares of Clearwire common stock.

(Title 18, United States Code, Section 371.)

**COUNT FOUR**

(Conspiracy to Commit Securities Fraud)

The Grand Jury further charges:

**Relevant Entities and Individuals**

23. The allegations contained in paragraphs 1 and 2 of this Indictment are repeated and realleged as though fully set forth herein.

24. At all times relevant to this Indictment, a co-conspirator not named as a defendant herein ("CC-2") was employed by McKinsey & Company, Inc. ("McKinsey"), a global management consulting firm.

**The Rajaratnam/CC-2 Insider Trading Scheme**

25. From at least in or about May 2008 through in or about October 2008, RAJ RAJARATNAM, the defendant, CC-2, and others known and unknown, participated in a scheme to defraud by disclosing Inside Information and/or executing securities transactions based on Inside Information pertaining to at least Advanced Micro Devices Inc. ("AMD"). The means by which RAJARATNAM and CC-2 effectuated the fraudulent scheme were as follows: CC-2 obtained Inside Information regarding certain of McKinsey's clients, including AMD. CC-2 communicated the Inside Information regarding AMD to RAJARATNAM in violation of duties of

trust and confidence that CC-2 owed to McKinsey and its clients. RAJARATNAM then caused the Galleon Technology Funds to execute securities transactions based on the Inside Information. CC-2 benefited from RAJARATNAM's trading because CC-2 was a direct or indirect investor in one or more hedge funds affiliated with Galleon.

**The Conspiracy**

26. From at least in or about May 2008 up to and including in or about October 2008, in the Southern District of New York and elsewhere, RAJ RAJARATNAM, the defendant, CC-2, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate and agree together and with each other to commit offenses against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) & 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

**Object of the Conspiracy**

27. It was a part and an object of the conspiracy that RAJ RAJARATNAM, the defendant, CC-2, and others known and unknown, unlawfully, willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive

devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

**Means and Methods of the Conspiracy**

28. Among the means and methods by which RAJ RAJARATNAM, the defendant, CC-2, and others known and unknown, would and did carry out the conspiracy were the following:

a. CC-2 misappropriated the Inside Information in violation of: (a) the fiduciary and other duties of trust and confidence that CC-2 owed to CC-2's employer and its clients; (b) the expectations of confidentiality of CC-2's employer and its clients; and (c) CC-2's employer's written policies regarding the use and safekeeping of confidential and material, nonpublic information.

b. CC-2 disclosed the Inside Information to RAJARATNAM in breach of CC-2's duty of confidentiality to CC-2's employer and its clients, with the understanding that RAJARATNAM

and others would use the Inside Information to purchase and sell securities, and thereby receive substantial illegal profits.

c. RAJARATNAM, while in possession of the Inside Information that he knew had been misappropriated by CC-2 in breach of CC-2's duty of confidentiality to CC-2's employer and its clients, purchased and sold securities based on such information and thereby received substantial illegal profits.

**Overt Acts**

29. In furtherance of the conspiracy and to effect the illegal object thereof, RAJ RAJARATNAM, the defendant, and CC-2 and their co-conspirators committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a. On or about August 15, 2008, CC-2 spoke with RAJARATNAM on RAJARATNAM's cell phone.

b. On or about August 15, 2008, in New York, New York, RAJARATNAM caused the Galleon Technology Funds to purchase approximately 2,100,100 shares of AMD.

(Title 18, United States Code, Section 371.)

**COUNT FIVE**

(Conspiracy to Commit Securities Fraud)

The Grand Jury further charges:

**Relevant Entities and Individuals**

30. The allegations contained in paragraphs 1 and 2 of this Indictment are repeated and realleged as though fully set

forth herein.

31. At certain times relevant to this Indictment, DANIELLE CHIESI, the defendant, worked for a hedge fund called New Castle Partners ("New Castle"). In or about 2008, New Castle was the equity hedge fund group of Bear Stearns Asset Management Inc. ("BSAM"). At certain times relevant to this Indictment, New Castle had assets under management of approximately $1 billion.

**The Rajaratnam-Chiesi Insider Trading Scheme**

32. From at least in or about July 2008 through in or about October 2008, RAJ RAJARATNAM and DANIELLE CHIESI, the defendants, and others known and unknown, participated in a scheme to defraud by disclosing Inside Information and/or executing securities transactions based on Inside Information pertaining to at least the following publicly traded companies: Akamai Technologies, Inc. ("Akamai") and AMD. The means by which RAJARATNAM and CHIESI effectuated the fraudulent scheme were as follows: CHIESI obtained Inside Information regarding Akamai from an employee of Akamai (the "Akamai Source"), and CHIESI and RAJARATNAM obtained Inside Information regarding AMD from multiple sources (the "AMD Sources" and, collectively, the "AMD/Akamai Sources"). The AMD/Akamai sources disclosed the Inside Information in violation of duties of trust and confidence owed by the AMD/Akamai Sources to their respective employers, their shareholders, and/or their employers' clients. CHIESI

communicated Inside Information regarding Akamai to RAJARATNAM. In addition, RAJARATNAM and CHIESI provided one another with Inside Information regarding AMD. RAJARATNAM caused the Galleon Technology Funds to execute securities transactions on the basis of this Inside Information, earning a total profit of approximately $3.5 million from the scheme.

**The Conspiracy**

33. From at least in or about July 2008 up to and including in or about October 2008, in the Southern District of New York and elsewhere, RAJ RAJARATNAM and DANIELLE CHIESI, the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate and agree together and with each other to commit offenses against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) & 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

**Object of the Conspiracy**

34. It was a part and an object of the conspiracy that RAJ RAJARATNAM and DANIELLE CHIESI, the defendants, and others known and unknown, unlawfully, willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative

and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

**Means and Methods of the Conspiracy**

35. Among the means and methods by which RAJ RAJARATNAM and DANIELLE CHIESI, the defendants, and others known and unknown, would and did carry out the conspiracy were the following:

a. The AMD/Akamai Sources misappropriated the Inside Information in violation of: (a) the fiduciary and other duties of trust and confidence that they owed to their respective employers, their shareholders, and/or their employers' clients; (b) the expectations of confidentiality of their respective employers, their shareholders, and/or their employers' clients; and (c) their respective employers' written policies regarding the use and safekeeping of confidential and material, nonpublic information.

b. The Akamai Source disclosed Inside Information regarding Akamai to CHIESI. The AMD Sources disclosed Inside Information regarding AMD to CHIESI or RAJARATNAM. RAJARATNAM and CHIESI provided one another with Inside Information regarding AMD, and CHIESI provided RAJARATNAM with Inside information regarding Akamai, all with knowledge that the Inside Information had been disclosed in violation of the duties of confidentiality owed by the AMD/Akamai Sources to their respective employers, their shareholders, and/or their employers' clients, and with the understanding that RAJARATNAM, CHIESI and others would use the Inside Information to purchase and sell securities, and thereby receive substantial illegal profits.

c. RAJARATNAM and CHIESI, while in possession of the Inside Information that they knew had been misappropriated by the AMD/Akamai Sources in breach of the duties of confidentiality owed by the AMD/Akamai Sources to their respective employers, their shareholders, and/or their employers' clients, purchased and sold securities based on such information and thereby received substantial illegal profits.

**Overt Acts**

36. In furtherance of the conspiracy and to effect the illegal object thereof, RAJ RAJARATNAM and DANIELLE CHIESI, the defendants, and their co-conspirators committed the following overt acts, among others, in the Southern District of New York and

elsewhere:

a. On or about July 24, 2008, CHIESI called RAJARATNAM from New York, New York.

b. On or about July 25, 2008, in New York, New York, RAJARATNAM caused the Galleon Technology Funds to sell short approximately 138,550 shares of Akamai common stock, which traded under the symbol "AKAM."

(Title 18, United States Code, Section 371.)

**COUNT SIX**

(Conspiracy to Commit Securities Fraud)

The Grand Jury further charges:

**Relevant Entities and Individuals**

37. The allegations contained in paragraph 31 in this Indictment are repeated and realleged as though fully set forth herein.

38. At certain times relevant to this Indictment, another co-conspirator not named as a defendant herein ("CC-3") served as a Senior Managing Director of BSAM and as a top executive of New Castle.

**The CHIESI/CC-3 Insider Trading Scheme**

39. From at least in or about July 2008 through in or about April 2009, DANIELLE CHIESI, the defendant, CC-3, and others known and unknown, conspired to engage in insider trading in accounts affiliated with New Castle. The means by which CHIESI,

CC-3, and others conspired to effectuate the fraudulent scheme were as follows: CHIESI obtained Inside Information regarding AMD, Akamai, International Business Machines Corp. ("IBM"), Sun Microsystems ("Sun") and other companies from the Akamai Source and from a co-conspirator not named as a defendant herein ("CC-4" and, together with the Akamai Source, the "Chiesi Inside Sources") who disclosed the Inside Information in violation of duties of trust and confidence owed by the Chiesi Inside Sources to their respective employers, their shareholders, and/or companies with which their employers had entered into confidentiality agreements. CHIESI shared certain of this Inside Information with CC-3 and others, and CHIESI and others caused the execution of securities transactions on the basis of certain of this Inside Information in accounts affiliated with New Castle, earning a total profit of more than $4 million from the scheme.

**The Conspiracy**

40. From at least in or about July 2008 up to and including in or about April 2009, in the Southern District of New York and elsewhere, DANIELLE CHIESI, the defendant, CC-3, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate and agree together and with each other to commit offenses against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) & 78ff, and Title 17, Code of Federal Regulations,

Sections 240.10b-5 and 240.10b5-2.

**Object of the Conspiracy**

41. It was a part and an object of the conspiracy that DANIELLE CHIESI, the defendant, CC-3, and others known and unknown, unlawfully, willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

**Means and Methods of the Conspiracy**

42. Among the means and methods by which DANIELLE CHIESI, the defendant, CC-3, and others known and unknown, would and did carry out the conspiracy were the following:

a. The Chiesi Inside Sources misappropriated the Inside Information in violation of: (a) the fiduciary and other duties of trust and confidence that they owed to their respective employers, their shareholders, and/or companies with which their employers had entered into confidentiality agreements; (b) the expectations of confidentiality of their respective employers, their shareholders, and/or companies with which their employers had entered into confidentiality agreements; and (c) their respective employers' written policies regarding the use and safekeeping of confidential and material, nonpublic information.

b. The Chiesi Inside Sources disclosed Inside Information regarding AMD, IBM, Akamai, Sun and/or other companies to CHIESI, who, in turn, disclosed this information to CC-3 and others.

c. CHIESI, CC-3, and others caused the execution of securities transactions on the basis of certain of this Inside Information in accounts affiliated with New Castle, while knowing the Inside Information had been misappropriated by the Chiesi Inside Sources in breach of duties of confidentiality owed by the Chiesi Inside Sources to their respective employers, their shareholders, and/or companies with which their employers had entered into confidentiality agreements, and thereby received substantial illegal profits.

**Overt Acts**

43. In furtherance of the conspiracy and to effect the illegal object thereof, DANIELLE CHIESI, the defendant, CC-3, and their co-conspirators committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a. On or about August 15, 2008, CC-3 called CHIESI in New York, New York.

b. On or about September 30, 2008, CHIESI caused the purchase of approximately 127,600 shares of AMD common stock, which traded on the New York Stock Exchange ("NYSE") under the symbol "AMD," in accounts affiliated with New Castle.

(Title 18, United States Code, Section 371.)

**COUNT SEVEN**

The Grand Jury further charges:

**Relevant Entities and Individuals**

44. The allegations contained in paragraphd 31 and 38 in this Indictment are repeated and realleged as though fully set forth herein.

45. During all times relevant to this Indictment, CC-4 was employed as a Senior Vice President and Group Executive at IBM.

**The CHIESI/CC-4 Insider Trading Scheme**

46. From at least in or about August 2008 through in or about April 2009, DANIELLE CHIESI, the defendant, CC-4, and others

known and unknown, conspired to engage in insider trading in accounts affiliated with New Castle. The means by which CHIESI, CC-4, and others conspired to effectuate the fraudulent scheme were as follows: CHIESI obtained Inside Information regarding AMD, IBM, Sun and other companies from CC-4, who disclosed the Inside Information to CHIESI in violation of duties of trust and confidence owed by CC-4 to IBM, its shareholders, and/or companies with which IBM had entered into a confidentiality agreement. CHIESI shared certain of this Inside Information with others and CHIESI and others caused the execution of securities transactions on the basis of certain of this Inside Information in accounts affiliated with New Castle.

**The Conspiracy**

47. From at least in or about August 2008 up to and including in or about April 2009, in the Southern District of New York and elsewhere, DANIELLE CHIESI, the defendant, CC-4, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate and agree together and with each other to commit offenses against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) & 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

**Object of the Conspiracy**

48. It was a part and an object of the conspiracy that

DANIELLE CHIESI, the defendant, CC-4, and others known and unknown, unlawfully, willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

**Means and Methods of the Conspiracy**

49. Among the means and methods by which DANIELLE CHIESI, the defendant, CC-4, and others known and unknown, would and did carry out the conspiracy were the following:

a. CC-4 misappropriated the Inside Information in violation of (a) the fiduciary and other duties of trust and confidence that CC-4 owed to IBM, its shareholders, and/or

companies with which IBM had entered into a confidentiality agreement; (b) the expectations of confidentiality of IBM, its shareholders, and/or companies with which IBM had entered into a confidentiality agreement; and (c) IBM's written policies regarding the use and safekeeping of confidential and material, nonpublic information.

b. CC-4 disclosed Inside Information regarding AMD, IBM, Sun and other companies to CHIESI, who, in turn, disclosed this information to CC-3 and others.

c. CHIESI, CC-4 and others caused the execution of securities transactions on the basis of certain of this Inside Information in accounts affiliated with New Castle, while knowing the Inside Information had been misappropriated by CC-4 in breach of duties of confidentiality, and thereby received substantial illegal profits.

**Overt Acts**

50. In furtherance of the conspiracy and to effect the illegal object thereof, DANIELLE CHIESI, the defendant, CC-4, and their co-conspirators committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a. On or about January 24, 2009, CC-4 called CHIESI in New York, New York.

b. On or about January 26, 2009, CHIESI caused the purchase of approximately 283,600 shares of Sun common stock,

which traded on the NASDAQ under the symbol "JAVA," in accounts affiliated with New Castle.

(Title 18, United States Code, Section 371.)

**COUNTS EIGHT THROUGH SEVENTEEN**

(Securities Fraud)

The Grand Jury further charges:

51. The allegations contained in paragraphs 1-4, 7-8, 10-11, 14-15, 17-18, 21-22, 24-25, 28-29, 31-32, 35-36, 38-39, 42-43, 45-46, and 49-50 of this Indictment are repeated and realleged as though fully set forth herein.

52. On or about the dates set forth below, in the Southern District of New York and elsewhere, RAJ RAJARATNAM and DANIELLE CHIESI, the defendants, unlawfully, willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails and of the facilities of national securities exchanges, in connection with the purchase and sale of securities, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of

business which operated and would operate as a fraud and deceit upon persons, to wit: (i) RAJARATNAM caused the Galleon Technology Funds to execute the securities transactions listed below in the securities of: (1) Clearwire based on material, nonpublic information he obtained from CC-1; (2) Akamai, based on material, nonpublic information he obtained from CHIESI; and (3) PeopleSupport, based on material, nonpublic information he obtained from a source at PeopleSupport; and (ii) CHIESI caused the securities transactions listed below to be executed in certain accounts affiliated with New Castle based on material, nonpublic information:

| COUNT | DEFENDANT(S) | APPROX. DATE | SECURITY | SECURITIES TRANSACTION |
|---|---|---|---|---|
| EIGHT | RAJARATNAM | March 24, 2008 | Clearwire (CLWR) | Galleon purchased 125,800 shares of common stock |
| NINE | RAJARATNAM | March 25, 2008 | Clearwire (CLWR) | Galleon purchased 136,000 shares of common stock |
| TEN | RAJARATNAM CHIESI | July 25, 2008 | Akamai (AKAM) | Galleon sold short 138,550 shares of common stock |

| | | | | |
|---|---|---|---|---|
| ELEVEN | CHIESI | July 25, 2008 | Akamai (AKAM) | New Castle sold short 91,000 shares of common stock |
| TWELVE | CHIESI | July 28, 2008 | Akamai (AKAM) | New Castle sold short 26,900 shares of common stock |
| THIRTEEN | RAJARATNAM CHIESI | July 29, 2008 | Akamai (AKAM) | Galleon sold short 173,300 shares of common stock |
| FOURTEEN | CHIESI | July 29, 2008 | Akamai (AKAM) | New Castle sold short 77,100 shares of common stock |
| FIFTEEN | RAJARATNAM CHIESI | July 30, 2008 | Akamai (AKAM) | Galleon sold short 86,650 shares of common stock and purchased 1,400 put options |
| SIXTEEN | CHIESI | July 30, 2008 | Akamai (AKAM) | New Castle sold short 119,800 shares of common stock and purchased 1,466 put options |

| | | | | |
|---|---|---|---|---|
| SEVENTEEN | RAJARATNAM | October 7, 2008 | PeopleSupport (PSPT) | Rajaratnam purchased 30,000 shares of common stock |

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2, and Title 18, United States Code, Section 2.)

**FORFEITURE ALLEGATION**

53. As a result of committing one or more of the foregoing securities fraud offenses, in violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 18, United States Code, Section 371; and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2, as alleged in Counts One through Seventeen of this Indictment, RAJ RAJARATNAM and DANIELLE CHIESI, the defendants, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the securities fraud offenses, in an amount of at least $20.8 million.

**Substitute Assets Provision**

54. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(i) cannot be located upon the exercise of due diligence;

(ii) has been transferred or sold to, or deposited with, a third party;

(iii) has been placed beyond the jurisdiction of the court;

(iv) has been substantially diminished in value; or

(v) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the forfeitable property described above.

(Title 15, United States Code, Sections 78j(b), 78ff;
Title 18, United States Code, Sections 371 and 981;
Title 21, United States Code, Section 853(p);
Title 28, United States Code, Section 2461;
and Title 17, Code of Federal Regulations,
Sections 240.10b-5 and 240.10b5-2.)

FOREPERSON

PREET BHARARA
United States Attorney